# United States District Court
## District of New Mexico

## Document Verification

| | |
|---|---|
| Case Title: | Anchieta v. USA |
| Case Number: | 03cv00244    cr 99-886 SC |
| Office: | |

### Document Information

Number: 9.

Description: MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION recommending movant's 2255 motion be denied and the case dismissed w/prejudice (cc: all counsel*)

Size: 18 pages (49k)

| Date Received: | 09/24/2003 10:08:03 AM | Date Filed: | 09/24/2003 | Date Entered On Docket: | 09/24/2003 |
|---|---|---|---|---|---|

### Court Digital Signature                    View History

75 29 85 08 1a 63 e1 81 e5 0b 9b 5c b5 e5 93 69 b4 ef fd 36 e5 4e 2e d4 c3 93 1b 92 79 fd 38 d8 19 c7
9a 6d 64 da 75 f8 a7 d3 78 62 44 5c 53 bc ef d2 11 7b af 92 6f fe 35 15 bf 60 5d c5 01 2c 67 e7 d0 f8
00 2d 45 cb 46 59 ec 59 4f c6 c1 5f dd 09 89 44 00 4a 0f 32 72 ed 77 4d 71 e7 70 61 6a 07 6a d6 85 40
b4 0c 5c 09 f4 56 16 fc 47 cc df bb ee 2b 98 03 b7 30 70 78 c4 77 68 ba 7a cd

### Filer Information

Submitted By: Laura M. Goldsmith

Comments: RECOMMENDED FINDING by Chief Magistrate Judge Lorenzo F. Garcia that the motion be denied and the case be dismissed wtih prejudice.

**Digital Signature:** The Court's digital signature is a verifiable mathematical computation unique to this document and the Court's private encryption key. This signature assures that any change to the document can be detected.

**Verification:** This form is verification of the status of the document identified above as of *Wednesday, September 24, 2003.* If this form is attached to the document identified above, it serves as an endorsed copy of the document.

**Note:** Any date shown above is current as of the date of this verification. Users are urged to review the official court docket for a specific event to confirm information, such as entered on docket date for purposes of appeal. Any element of information on this form, except for the digital signature and the received date, is subject to change as changes may be entered on the Court's official docket.

70

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

vs.

SALVADOR ANCHIETA,

    Defendant-Movant.

CIVIL NO. 03-244 MCA/LFG
CRIM. NO. 99-886 SC

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

1. This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed February 24, 2003, with an amended Motion [Doc. 4] filed March 10, 2003.[2] Movant Salvador Anchieta ("Anchieta") attacks the judgment and sentence entered by the United States District Court for the District of New Mexico in United States v. Anchieta, No. CR 99-886 SC.

2. Anchieta pled not guilty to a two-count indictment, charging conspiracy to possess with intent to distribute over 100 kg of marijuana in violation of 21 U.S.C. § 846, and possession with intent to distribute over 100 kg of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] Movant's original motion was unsigned; the Court directed him to file a properly signed motion, and he did so.

Trial was had before U.S. District Judge Bruce D. Black. On December 1, 1999, a jury found Anchieta guilty of the conspiracy charge but acquitted him on the charge of possession with intent to distribute. His motions for new trial and for judgment of acquittal were denied.

3. A sentencing hearing was held on July 26, 2000. Judge Black rejected the recommendation of the Presentence Report that Anchieta receive an enhanced sentence for a leadership role in the conspiracy, but he accepted the recommendation for an enhancement for obstruction of justice. Anchieta was sentenced to a term of 84 months plus 4 years supervised release. Judgment was entered on August 14, 2000.

4. Anchieta appealed his conviction. The U.S. Court of Appeals for the Tenth Circuit upheld the conviction, judgment and sentence in an Order and Judgment filed April 16, 2002. Anchieta then filed this Motion to Vacate, Set Aside or Correct Sentence under § 2255.

5. Anchieta asserts as grounds for review: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) the conviction was obtained by evidence derived from an unlawful arrest; and (4) insufficiency of the evidence.

## Factual Background

6. Because one of Anchieta's claims involves sufficiency of the evidence, the Court reviews in some detail the facts placed before the jury.[3]

7. At trial, the government presented the testimony of six witnesses. The first was Richard

---

[3] "In Jackson v. Virginia, the Supreme Court held that a sufficiency of the evidence claim implicates a defendant's constitutional right to due process of law. 443 U.S. 307, 320-21, 99 S. Ct. 2781, 2789-90 (1979). Thus, such a claim is reviewable on a petition for habeas corpus. See 28 U.S.C. § 2254(a). The ultimate legal issue of the sufficiency of the evidence is reviewed de novo." Grubbs v. Hannigan, 982 F.2d 1483, 1486 n.3 (10th Cir. 1993).

2

Martinez ("Martinez"), U.S. Border Patrol Agent.[4] Martinez testified that, in the early morning hours of May 25, 1999, he posted himself for surveillance in a Border Patrol vehicle just off Highway 146, a north-south route in the southwestern part of New Mexico which had, in his experience, often been used as a transportation route for narcotics and undocumented aliens. Martinez's vehicle was facing east but was not visible from the road. He observed no traffic at all for several hours, but around 4:00 a.m. he saw three pickup trucks pass his location heading south.

8. About a half hour later, he saw three sets of headlights heading north. These appeared to be the same three vehicles he had seen earlier. Martinez thought the trucks could be on a return trip from loading undocumented aliens or narcotics. He turned on his emergency lights and pulled the first truck over to do an immigration check. When he stopped the first truck, he saw bundles in the bed of the pickup in plain view and recognized them as marijuana by their appearance and odor.

9. Approximately two minutes after the Salas truck was pulled over, a white pickup drove past the scene. Martinez thought this was the second truck in the convoy he had seen earlier, but as he was concentrating on Salas, who at this point was outside of his vehicle, he wasn't able to stop the second truck.

10. Martinez arrested Salas and placed him the police vehicle when he saw a third pickup truck approaching from the south. This truck appeared approximately 6 or 7 minutes after the white truck sped by. Given the spacing of the headlights when Martinez first spotted the three trucks heading north, he would have expected this third truck to arrive sooner than it did, and he concluded that this truck had slowed down or stopped when he saw the police emergency lights, then proceeded north after a pause. The emergency lights were flashing on his police vehicle, and Martinez himself

---

[4]The Martinez testimony is found in the Trial Transcript for November 29, 1999, at 103-189.

3

stood in the southbound lane of the highway with a flashlight in an attempt to flag down the third truck. The truck didn't stop, however, but veered toward Martinez and then continued heading north. Martinez ran to his vehicle, pursued and ultimately pulled over the third truck. Anchieta was the driver.

11. Martinez testified that Anchieta appeared nervous but was cooperative. Martinez said that Anchieta told him he was a construction worker and was out looking for work, and that he had spent the night with a friend at Windmill Estates, a group of mobile homes nearby. Martinez took him to where Salas was secured in the police vehicle and asked whether he knew Salas. Anchieta said no. Salas also denied knowing Anchieta. Anchieta allowed Martinez to search his pickup truck, and Martinez found no evidence of marijuana or other illegal activity. At this point, Agent Booth had arrived on the scene to assist Martinez. Having no reason to arrest Anchieta at the time, Martinez released him.

12. Martinez learned that, later that day, a 329-pound load of marijuana was found near highway mile marker 13, a location about three miles south of the spot where Martinez stopped Salas and Anchieta.

13. Robert A. Booth ("Booth"), a U.S. Border Patrol Agent, also testified for the government.[5] He said that he was on patrol in the area when he received a radio call sometime between 4:00 and 5:00 from Agent Martinez, asking for assistance. When he arrived on the scene, Salas was in the patrol car, and Anchieta was still in his own vehicle. Booth says that he saw Anchieta and Salas gesturing to one another, and making facial and mouthing signals to each other while Martinez's back was turned to them.

---

[5]Booth's testimony appears in the Trial Transcript for November 30, 1999, at 304-322.

14. The government also called David Baeza ("Baeza") as a witness.[6] Baeza testified that Salas and Anchieta both worked for his construction company, that they knew each other and, in fact, had known each other before they began working for him.

15. Frank Salas testified next.[7] He stated that he had known Anchieta for 7-8 years, and that he and Anchieta would often carpool to work together. He said that, on May 24, 1999, the day before his arrest, he had a conversation with Anchieta at work, during which Anchieta told him that they could "make some quick cash" – that is, they would split $1,000 – for picking up a load of marijuana and delivering it to the Snappy Mart in Deming. He agreed to do so and in the early hours of the next morning, he met Anchieta at a truck stop as they planned.

16. Salas testified that the two of them drove south on Highway 146, each in his own vehicle, and with Anchieta in the lead until Anchieta stopped at mile marker 10. Salas says he proceeded south to mile marker 8 and stopped. Some people appeared and threw bags of "some stuff" into the back of his truck. He then left and began to drive back north up Highway 146, passing Anchieta who was still parked by the side of the road.

17. Salas said he also passed a white pickup truck before being hailed over by Martinez. The white pickup belonged to his friend and co-worker, Paul Palomares, and he testified on cross-examination that Palomares was driving the white truck at the time. Salas made two cell phone calls to Palomares' cell phone, the last one just a few minutes before he was pulled over by Martinez.

18. Salas's version of the events of his arrest and the stop of Anchieta were consistent with

---

[6]Baeza's testimony appears in the Trial Transcript for November 29, 1999, at 189-199.

[7]Frank Salas is referred to in the transcript as Frank Salaiz-Salas. His testimony appears in Trial Transcript for November 29, 1999, at 200-226, and for November 30, 1999, at 238-284.

5

the testimony of Martinez. Salas said that after his arrest he was taken into Lordsburg and interrogated. He first told interviewers that two unknown persons had approached him at the Deming Snappy Mart and asked if he wanted to make some quick money by picking up some bundles. Salas acknowledged on cross examination that this was a lie; he says he told the agent this because he was scared.

19. Agent John R. Czapko ("Czapko")[8] testified in the government's case-in-chief and was called by the defense later in the trial. Czapko confirmed that Salas initially stated in his post-arrest interview that two unknown individuals had approached him at the Snappy Mart and asked if he wanted to make some money. Czapko said that Salas later acknowledged this was not true and identified Anchieta as being the instigator of the marijuana deal.

20. Salas also testified that Anchieta came to visit him some time after his arrest. He says that Anchieta took him for a ride around the block and asked him to change his story and say that Anchieta was just "at the wrong place and at the wrong time."

21. Salas acknowledged that he pled guilty to marijuana charges and had not yet been sentenced at the time of his testimony in this case.

22. The government also called as a witness James R. Long ("Long"), senior special agent with the U.S. Customs Service.[9] Long testified that he interviewed Salas, and also Anchieta after Anchieta was brought to the Customs office in the afternoon of May 25, 1996. There is nothing on the record, one way or the other, as to whether Anchieta received Miranda warnings.

---

[8]Czapko's testimony appears in the Trial Transcript for November 30, 1999, at 323-331, 346-352, and 375-376.

[9]Long's testimony appears in the Trial Transcript for November 30, 1999, at 285-304.

6

23. Long testified that Anchieta told him he was out on the highway at 4:00 in the morning because he was going down to Playas to apply for a job at the smelter there. Long questioned why he would be going out so early in the morning to look for work, and he says Anchieta told him he was turned away at the smelter gate by a security guard and told to come back later. When Long pointed out that he could check with security to confirm whether Anchieta had, in fact, been there, Anchieta then changed his story and said that he never made it all the way down to Playas but instead turned around and came back.

24. Later that day, Long said that Anchieta's pickup truck was seized and that a Customs dog was run on the truck but failed to alert to the presence of any narcotics.

25. The defense case was presented primarily through the testimony of Anchieta.[10] He told the jury that the reason he was out on the highway at 4:00 a.m. on May 25, 1999 was because he was looking for work at the Playas smelter. He said he had been working as a construction worker but had been laid off, and since he had previously been employed at the Playas smelter where the pay was much better than in the construction industry, he drove down to Playas during regular hours on May 24 to look for work there. He also testified that he was at the Windmill Estates that day to try to find a friend who might help him get a job at the smelter. He denied telling Agent Martinez that he had spent the night at the Windmill Estates.

26. Anchieta said he was making a second attempt to drive down to Playas at 4:00 a.m. on May 25 when he was stopped by Martinez. Anchieta explained it is necessary for job seekers to arrive early at the plant in order to catch the bosses as they're coming in to work, because once the bosses are inside the building it's much more difficult to speak to them. On cross-examination,

---

[10] Anchieta's testimony appears in the Trial Transcript for November 39, 1000 at 380-410.

7

however, he acknowledged that the bosses generally do not come into work until around 6:00 a.m.

27. Anchieta testified further that, on his way down to the smelter, his truck was acting up and he had to go slowly. He says two trucks passed him by, and he didn't notice at the time whose trucks they were. At some point on the route to Playas he says he gave up, worried that his truck wouldn't make it, and he just turned around and started driving back. He pulled over when flagged down by Agent Martinez.

28. Anchieta denied changing his story once Agent Long told him they could check out whether he'd actually gone to the smelter and talked to the security guard. He says he told them to go ahead and check.

29. Anchieta said that he'd known Frank Salas for about 15 years. They played baseball on the same team and had worked together on a couple of jobs. He said they were not close friends, and he denied approaching Salas and trying to hire him to move a load of marijuana. He admitted initially telling Agent Martinez that he didn't know Salas. He denied that he took Salas for a ride around the block and asked him to change his story; rather, said Anchieta, he told Salas to tell the truth.

## Discussion

### A. Ineffective Assistance of Trial Counsel

30. To establish ineffective assistance of counsel, Anchieta must make a two-prong showing: (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. Strickland v. Washington, 466 U. S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *accord*, Rogers v. United States, 91 F. 3d 1388, 1391 (10th Cir. 1996). To prove deficient performance, Anchieta must overcome the presumption that counsel's conduct was constitutionally

8

effective. Duvall v. Reynolds, 139 F. 3d 768, 776 (10th Cir. 1998).

31.  Scrutiny of counsel's performance must be highly deferential and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F. 3d 1459, 1474 (10th Cir. 1995). In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. Hoxsie v. Kerby, 108 F. 3d 1239, 1246 (10th Cir. 1997).

32. Anchieta argues that his trial attorney was ineffective in the following ways: (1) he failed to raise the issue of lack of probable cause for Anchieta's arrest and failed to move to suppress any statements Anchieta made following the allegedly unlawful arrest; (2) he failed to address the issue of insufficient evidence; (3) he failed to call as a witness Veronica Hernandez, who would have testified that persons other than Anchieta were responsible for the charged conspiracy; (4) he failed to raise the issue of insufficiency of the evidence to support an enhancement for obstruction of justice; and (5) he failed to move to suppress Anchieta's statements made following his arrest and before he received his Miranda warnings. Each of these claims will be addressed separately below.

### Claim of Failure to Seek Suppression of Statements Made After Unlawful Arrest

33.  Anchieta claims in his petition that his attorney "failed to raise issue of illegal arrest (Officer Martinez had no reason, much less probable cause, to stop Petitioner; any statements by Petitioner made in the course of such stop should have been suppressed)." [Doc. 4, at 6].

34. On the appeal in this case, the Tenth Circuit effectively held that there was probable cause for the arrest. In rejecting Anchieta's claims that the trial court should have granted his motion for a mistrial, the Court ruled:

> We find no abuse of discretion here. The evidence against Defendant

9

> was compelling. Salas directly implicated Defendant, Agent Martinez observed him traveling in the same convoy as Salas, and there was simply no credible reason for Defendant to be where he was at that time unless he was involved with Salas.

United States v. Anchieta, No. 00-2307, slip op., at 6 (10th Cir. Apr. 16, 2002) [Doc. 8, Ex. 1]. This Court also takes note of the fact that there was evidence that Anchieta was communicating with Salas by hand and facial gestures as they were stopped by the side of the road, and evidence that Anchieta told Martinez he did not know Salas but later admitted this was a lie.

35. The Court finds a reasonable attorney could well have decided it would be futile to argue that the arrest was without probable cause. It is not ineffective assistance of counsel to fail to pursue a meritless theory. United States v. Kramer, 168 F.3d 1196, 1202 (10th Cir. 1999). This claim, therefore, fails to meet the first prong of the Strickland standard.

### Claim of Failure to Address the Issue of Insufficient Evidence

36. Anchieta next claims that his trial attorney "failed to address the issue of insufficient evidence," in that he failed to argue the weakness of the prosecution's case, in that it consisted only of the uncorroborated testimony of co-conspirator Salas and Anchieta's own inability to explain his presence at the scene of Salas' arrest. This claim is factually incorrect; trial counsel did in fact raise the issue of insufficient evidence on three occasions: at trial following close of the government's case, in a post-verdict telephonic conference on the government's motion to take defendant into custody, and in a formal post-trial motion for judgment of acquittal.

37. At trial on November 30, 1999, after the government rested its case, Anchieta's attorney made a formal motion to the Court for judgment of acquittal pursuant to Fed. R. Crim. P. 29(a), which provides for such a motion when "the evidence is insufficient to sustain a conviction." Trial

10

counsel made the very argument that Anchieta claims he failed to make: that is, he argued to the Court that there would be nothing to sustain the government's case if the Salas testimony were rejected as not credible, and he argued that the testimony was, in fact, not credible. Judge Black stated that credibility is generally an issue for the jury, not the judge. He took the motion under advisement, but later submitted the case to the jury. [Trial Transcript for November 30, 1999, CR 99-886, at 352-63].

38. Although the record contains no transcript of the telephonic conference between counsel and Judge Black held on December 1, 1999, the Clerk's Minutes indicate that Anchieta's attorney renewed his motion for judgment of acquittal during that conference. The motion was denied, as Judge Black ordered Anchieta remanded into custody pending sentencing. [Doc. 35 in CR 99-886, at 4].

39. Finally, Anchieta's attorney filed a formal, written post-trial Motion for Judgment of Acquittal [Doc. 37 in CR 99-886], in which he again argued that the evidence was insufficient to sustain the verdict. That motion was denied. [Doc. 41].

40. Thus, Anchieta's trial counsel did in fact raise the issue of insufficiency of the evidence, and Anchieta has therefore failed to show any lack of diligence in this matter. The fact that the argument was rejected by the trial judge does not evidence ineffective assistance.

### Claim of Failure to Call a Witness

41. Anchieta next cites his attorney's failure to call Veronica Hernandez as a witness as an example of ineffective assistance. Anchieta claims that Ms. Hernandez would have testified that the true participants in the marijuana conspiracy were Frankie Salas and Paul Palomares, not Anchieta.

42. "Whether to call a particular witness is a tactical decision and, thus, a 'matter of

11

discretion' for trial counsel," United States v. Glick, 710 F.2d 639, 644 (10th Cir. 1983); United States v. Miller, 643 F.2d 713, 714 (10th Cir.1981). A petition for habeas corpus relief based on counsel's failure to call witnesses should present this evidence in the form of an affidavit from the witness. United States v. Ashimi, 932 F.2d 643, 650 (7th Cir.1991). A petitioner's general assertion as to an uncalled witness's potential testimony, without more, is speculative, and fails to support a finding of ineffective assistance. *See,* United States v. Muehlbauer, 892 F.2d 664, 669 (7th Cir.1990).

43. The trial transcript shows that Veronica Hernandez was scheduled to be called as part of defendant's case but, upon motion of the government to exclude her, defense counsel decided not to call her because her testimony would be cumulative of other witnesses'. The transcript makes clear that she would have testified only that she made application for two cell phones for Robert Gallosa and Paul Palomares and that she did not know who used the phones. There is no indication that she would have testified that Anchieta was not part of a marijuana conspiracy. [Trial Transcript for November 30, 1999, CR 99-886, at 364-65].

44. It is apparent that counsel's decision not to call Veronica Hernandez was a matter of trial strategy rather than inadvertent oversight or deficient performance. "For counsel's actions to rise to the level of constitutional ineffectiveness, his strategic decisions must have been '"completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."' Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000). Anchieta has not met this burden. There is no indication that Ms. Hernandez "would present the only defense available," United States v. Miller, *supra*, at 714, nor that she would even have testified as Anchieta alleges. He does not supply her affidavit, nor does he point to anything else in the record to show what direction her testimony would have taken had she been called. His bald assertion that she would have exonerated him had she been

12

allowed to testify does not support a claim of ineffective assistance. To the contrary, evidence that there as a conspiracy to traffic in controlled substances could well have backfired in that the proposed testimony could well bolster the government case.

### Claim of Failure to Argue Insufficiency of Evidence in Opposition to Sentence Enhancement for Obstruction of Justice

45. Anchieta next argues that his attorney was ineffective during the sentencing phase, in failing to raise the issue of insufficiency of the evidence to support the sentence enhancement based on obstruction of justice. He claims that the evidence regarding obstruction of justice was insufficient in that it was based solely on uncorroborated testimony of Salas, his co-conspirator, who testified at trial that, some time after their arrest, Anchieta took him for a ride around the block and asked him to change his story and say that Anchieta was uninvolved in the conspiracy but was merely "at the wrong place and at the wrong time." [Trial Transcript, November 29, 1999, No. CR 99-886, at 225].

46. However, it is apparent from the record that Anchieta's attorney did in fact raise this issue. He filed Objections to Presentence Report [Doc. 52 in CR 99-886] in which he argued that the Presentence Report was incorrect in its conclusion that Anchieta attempted to obstruct justice by certain statements or requests he made to Salas. The objection was based on the argument that Salas was not a credible witness. [Id., at 3-4].

47. Furthermore, counsel argued at the sentencing hearing that, "I've pretty much set forth my objections [to the Presentence Report], Your Honor. It becomes a credibility issue. The Court had an opportunity to review the demeanor and veracity of Mr. Salas. I think I was able to demonstrate it on the cross-examine, that he was less than truthful throughout his exchanges with the government . . . ." [Transcript of Sentencing Hearing, July 26, 2000, at 3-4].

13

48. The record shows that Anchieta's counsel raised the issue that, in order to enhance the sentence based on obstruction of justice, the Court would have to believe the testimony of Salas and not that of Anchieta and pointed out where he thought Salas' testimony was not credible. The Court rejected the argument, but it was clearly raised by counsel. Again, Anchieta fails to establish the first prong of Strickland with this claim.

### Claim Regarding Failure to Object to Alleged Miranda Violation

49. Anchieta's final claim of ineffective assistance is counsel's failure to move for suppression of statements made by Anchieta following his arrest but before he was advised of his rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). There is nothing at all on the record to indicate that Anchieta was or was not read his Miranda rights, nor when this might have occurred. Anchieta does not describe the statements he allegedly made prior to the Miranda warnings which he claims should have been suppressed, nor is there anything to show that the admission of any such statements prejudiced his defense.

50. Aside from the fact that he did not raise this issue on appeal, Anchieta has failed to meet his burden of showing that his attorney's performance with regard to the asserted Miranda issue constituted ineffective assistance of counsel.

### B. Ineffective Assistance of Counsel on Appeal

51. A criminal defendant has the right to effective assistance of counsel not only at trial but also through a first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 105 S. Ct. 830 (1985); Hannon v. Maschner, 845 F.2d 1553, 1558 (10th Cir. 1988). Anchieta's claim of ineffective assistance of appellate counsel is derivative of his claims regarding the performance of his trial attorney. He argues that appellate counsel's performance was deficient in that he failed to raise any of the issues described

14

above in connection with trial counsel's alleged failings and because he failed to raise the issue of trial counsel's ineffectiveness.

52. The Court having found that trial counsel's actions or inactions were in keeping with the standards of a reasonably well-qualified attorney, it follows that no fault can be assigned to appellate counsel for taking those same actions. In addition, there being nothing on the record to show that trial counsel was ineffective or that any asserted error on his part prejudiced Anchieta's defense, there is no basis for faulting appellate counsel for failure to raise an issue of ineffective assistance of trial counsel.

### C. Conviction Secured by Evidence Obtained From Unlawful Arrest

53. In Claim Three, Anchieta argues that his conviction was unconstitutionally obtained by use of evidence arising from an arrest without probable cause.

54. For the reasons given above in the discussion of ineffective assistance, the Court finds Anchieta's arguments with regard to lack of probable cause to be without merit.

### D. Insufficiency of the Evidence

55. In his final challenge, Anchieta argues that the evidence was insufficient to sustain the guilty verdict. In reviewing a habeas challenge to the sufficiency of the evidence, the Court must decide "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U. S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

> Such review is 'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'

15

Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996), *quoting* Wright v. West, 505 U. S. 277, 296-97, 112 S. Ct. 2482, 2492-93 (1992). "The test is this: on the basis of the whole record, '[t]he evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" United States v. Bowie, 892 F.2d 1494, 1496-97 (10th Cir. 1990). In reviewing a sufficiency claim, the Court is not permitted to weigh conflicting evidence or consider witness credibility but must accept the jury's resolution of the evidence, as long as it is within the bounds of reason. Grubbs v. Hannigan, *supra*, at 1487.

56. The evidence presented at trial is given above. Applying the test set forth in Jackson v. Virginia, *supra*, 443 U. S. at 319, the Court finds that, viewing this evidence in the light most favorable to the prosecution, it is sufficient to support the jury's verdict. Under the record in this case, a rational jury could have found the essential elements of the crime beyond a reasonable doubt.

57. The jury could well have believed Border Patrol Agent Martinez's uncontradicted testimony that, while on patrol, he saw three trucks heading south in an apparent convoy on a deserted stretch of highway at 4:00 in the morning and, a half hour later, observed what appeared to be the same three trucks heading north. There had been no other traffic on the highway at all for several hours. When the officer stopped the first truck and found that it was laden with marijuana, he missed the second truck, but flagged down the third. Although the third truck had no illegal cargo, the driver's explanation for his presence on the highway at that hour was unconvincing to the officer, and could well have been unconvincing to the jury.

58. Salas, the driver of the marijuana-bearing truck, was arrested and interrogated and, although he initially denied knowing Anchieta, later named him as the person who recruited him and

16

set the plan in motion for transporting marijuana up the highway and delivering it to Deming. Anchieta's counsel attempted to erode Salas' credibility on cross-examination, by pointing out that he had entered into a plea agreement under which he agreed to testify against Anchieta in exchange for leniency in his sentence, and by eliciting testimony that he lived rather larger than Anchieta and had a spottier work attendance record. However, the jury chose to believe Salas, and the Court cannot say that his testimony was so inherently incredible that no reasonable jury would have done so.

59. Anchieta testified in his own defense and explained why he was looking for work so early in the morning. However, his statement that he had to get to the smelter at 4:00 a.m. in order to catch the bosses as they were entering the plant does not mesh with his testimony that the bosses usually arrived around 6:00 p.m. A reasonable jury could well have found this explanation implausible. Anchieta denied that he recruited Salas for the job, and he denied lying to police officers. The jury did not believe him, but instead chose to believe the testimony of the police officers and Salas. The Court cannot say this choice was irrational. After all, Anchieta was caught in a lie concerning whether he knew Salas, and his other explanations about his presence on the road at that time and place, and his "changed mind" because of car trouble that compelled him to return to the area, were all highly suspect and a jury was entitled to discredit his explanations. It is not the function of the Court on habeas review to resolve issues of credibility. The Court finds the evidence constitutionally sufficient to support the verdict.

17

## Recommended Disposition

That the motion be denied and the case be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge